UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CINSIA CIOLINO and ALFONSO CIOLINO, | * * * | |
| Plaintiffs, | * * | Civil Action No. 13-13300-ADB |
| v. | * * | |
| AARON EASTMAN, et al., | * * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER
ON PLAINTIFFS' MOTION FOR ATTORNEY FEES**

BURROUGHS, D.J.

For the reasons set forth below, the Court <u>GRANTS</u> in part Plaintiff's motion for attorneys' fees [ECF No. 147] and Plaintiff's supplemental motion for attorneys' fees [ECF No. 155].

**I.   INTRODUCTION**

This case arises from an incident that occurred at a street festival in Gloucester, Massachusetts in June 2013, where Plaintiff Alfonso Ciolino ("Plaintiff") was injured while being placed under arrest by officers of the Essex County Sheriff's Department. Plaintiff commenced this civil action against the arresting officers, Defendants Aaron Eastman, David Earle, and George Gikas. In January 2016, after a four-day trial, the jury returned a verdict in favor of Defendants on Plaintiff's malicious prosecution claim. The jury found that Eastman and Earle were not liable with respect to Plaintiff's § 1983 excessive force claim, but found that Gikas was liable under § 1983 and awarded Plaintiff $140,000 in damages.

Plaintiff now moves for an award of attorneys' fees in accordance with 42 U.S.C. § 1988. To calculate a fee award, the First Circuit has instructed that "a trial court generally should

employ the lodestar method." Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir. 2007). Under this method, the Court begins with the attorneys' billing records, subtracting any hours that are "duplicative, unproductive or excessive." Id. The Court then multiplies the number of reasonable hours billed by the prevailing hourly rate in the community. Id. "The resulting amount constitutes the lodestar," which the Court may then adjust further "for any of several reasons, including the quantum of success achieved in the litigation." Id.

## II. DISCUSSION

### A. The Attorneys' Hourly Rates

#### 1. Mr. Sinsheimer's Hourly Rate

Plaintiff requests that the hourly rate for Mr. Sinsheimer, who served as lead counsel, be set at $500. Defendants do not specifically discuss Mr. Sinsheimer's hourly rate in their opposition to the motion for attorneys' fees, but they do propose a rate of $400 per hour in their "supplemental opposition." [ECF Nos. 153, 156]. Plaintiff provided affidavits from Joseph Savage, Jr., R. Bradford Bailey, Rosemary Scapicchio, and Howard Cooper to support Mr. Sinsheimer's request for a rate of $500 per hour. [ECF Nos. 148-7, 148-8, 148-9, 150].

Mr. Sinsheimer's hourly rate in federal civil rights litigation has been addressed in several other cases. In 2015, Judge Sorokin set Mr. Sinsheimer's rate at $400 per hour. Matalon v. O'Neill, Civ. A. No. 13-10001-LTS, 2015 WL 1206343, at *2 (D. Mass. Mar. 17, 2015), aff'd sub nom. Matalon v. Hynnes, 806 F.3d 627 (1st Cir. 2015). Judge Sorokin explained that Mr. Sinsheimer had been awarded $350 per hour in 2011 by Judge Woodlock, and he adjusted the amount upward to $400 per hour to account for inflation and the additional experience gained by Mr. Sinsheimer in the intervening years. Id.; see also Ferraro v. Kelley, Civ. A. No. 08-11065-

DPW, 2011 WL 576074, at *5 (D. Mass. Feb. 8, 2011) (Woodlock, J.) (awarding Mr. Sinsheimer $350 per hour, and discussing Mr. Sinsheimer's fee awards in earlier federal cases).

Plaintiff cites two recent federal civil rights cases in which experienced attorneys were awarded fees of $450 and $500 per hour. Earlier this year, Judge Dein determined that "the prevailing rate for experienced lead counsel in straightforward civil rights cases . . . is in the range of $400 per hour," but she awarded lead counsel in that case $450 per hour because he had previously been awarded the same rate in another case before the court, "albeit without discussion." Meagher v. Andover Sch. Comm., Civ. A. No. 13-11307-JGD, 2016 WL 70447, at *8 (D. Mass. Jan. 6, 2016). In 2011, Judge Gertner awarded two experienced attorneys $500 per hour for what she described as an "extraordinarily difficult" case. Drumgold v. Callahan, 806 F. Supp. 2d 428, 432 (D. Mass. 2011). Judge Sorokin cited the complexity and extended duration of Drumgold in declining to award Mr. Sinsheimer the same fee. Matalon v. O'Neill, 2015 WL 1206343, at *2.

This case can fairly be described as a "straightforward" civil rights case, which was not significantly more complicated than Matalon. Considering that Judge Sorokin awarded Mr. Sinsheimer $400 per hour in that case last year, and that Judge Dein determined this year that the prevailing rate for experienced lead counsel in such cases is approximately $400 per hour, the Court sees no compelling reason to depart from these assessments. Therefore, the Court sets Mr. Sinsheimer's fee in this case at $400 per hour.

### 2. Ms. Thomas's Hourly Rate

Defendants argue that the fee request for attorney Lauren Thomas should be stricken because Plaintiff has not provided an affidavit from Ms. Thomas. Although the party seeking attorneys' fees "bears the burden of providing this Court with affidavits and other forms of

evidence," Martino v. Massachusetts Bay Transp. Auth., 230 F. Supp. 2d 195, 205 (D. Mass. 2002), the Court is not aware of any requirement that the affidavit must always come directly from the individual who performed the work. Here, Plaintiff represents that Ms. Thomas left the firm in early 2015. [ECF No. 154, at 1]. Her work on this case is discussed in Mr. Sinsheimer's declaration [ECF No. 148], and her qualifications and her hourly rate are supported by affidavits from R. Bradford Bailey and Rosemary Scapicchio. [ECF Nos. 148-8, 148-9]. In addition, Plaintiff notes that Judge Sorokin awarded Ms. Thomas fees at a rate of $315 per hour in the Matalon case last year. Matalon, 2015 WL 1206343, at *2. The Court considers this documentation sufficient to award fees for Ms. Thomas's work.

Plaintiff has conceded that Ms. Thomas's hourly fee should be reduced from $390 per hour to $315 per hour, in line with the Matalon decision.

### B.    Hours Expended by the Attorneys

#### 1.    Alleged Excessive Billing

Defendants argue that Plaintiff's attorneys "billed excessively on numerous occasions," and provide a table identifying six entries that they claim are excessive. [ECF No. 153, at 6]. It is not apparent to the Court why four of those entries appear "excessive." The first entry, "Edti [sic] ints," in the context of the billing records submitted by Plaintiff, appears to be shorthand for "edit interrogatories." Four hours may seem excessive for some editing tasks, but not for others, such as when significant substantive edits are required. Thus, the Court will not second-guess this entry. Next, the fact that some entries concerning initial disclosures were approximately two months apart (January and March 2014) likely reflects the fact that one defendant, Frank

Cousins, made his disclosures separately from the other defendants, and did so at a later date, consistent with the joint scheduling order entered in this case. [ECF No. 21].

### 2. Alleged Duplicative Billing

Next, Defendants claim that Plaintiff's counsel billed excessively for "duplicative tasks being performed by multiple attorneys." A table identifies the entries to which Defendants object. [ECF No. 153, at 7–8]. The Court notes that, as a general matter, it may be necessary in some instances for two attorneys to perform a task together. For instance, it does not seem unreasonable for a conference with clients to include both attorneys working on the case. While it may have been ideal for only one attorney to prepare Dr. Pawson for trial, again, it is not facially unreasonable for two attorneys to have done so. Other entries appear to be instances in which the junior attorney, Mr. Stoker, assisted the senior attorney, Mr. Sinsheimer, with certain tasks, including preparation for depositions and preparation for mediation. Providing such assistance is an appropriate role for a junior attorney. The Court does note two minor errors. The entries for Mr. Stoker to "Review Excessive Force Case Alexis v. MacDonalds" seem to be erroneously duplicated, so the Court will subtract 0.50 of an hour from Mr. Stoker's total hours. It also appears that both Mr. Stoker and the paralegal, Rachel Costello, had entries in January 2015 for time to send liens to the judge and opposing counsel. While it could be that Mr. Stoker's work differed from Ms. Costello's, the entry is sufficiently unclear that the Court will subtract Mr. Stoker's entry for 0.50 of an hour from his total hours.

### 3. Alleged Vague Billing

Defendants have also provided a table of entries that they claim are overly vague. [ECF No. 153, at 8–9]. The Court disagrees with the assertion that entries such as "review discovery responses" and "review deposition transcripts" are vague. Mr. Stoker has provided a

supplemental affidavit to explain the "witness box" entries, which represent work to prepare an extensive file of potential exhibits pertaining to each witness. [ECF No. 154-1, at 2–3].

### 4. Alleged Block Billing

Lastly, Defendants allege that Plaintiff's counsel engaged in block billing, which involves grouping several tasks completed during a day into a single entry for that day. See Hermida v. Archstone, 950 F. Supp. 2d 298, 311–12 (D. Mass. 2013). Defendants cite several entries where Plaintiff's attorneys grouped two or three tasks into a single entry. [ECF No. 153, at 10–11]. Some entries cited by Defendants are instances where smaller tasks could reasonably be subsumed within a larger overarching task, such as trial preparation in January 2016 and brief-writing in February 2016. In addition, Plaintiff does not contest a reduction in the value of Ms. Thomas's time due to block billing, [ECF No. 154, at 6 n.3], so the Court will reduce the award for her fees by ten percent. More concerning are the entries during trial, which Plaintiff does not deny are block billed. Plaintiff argues those entries are nonetheless sufficiently detailed to remedy the principal harm of block billing, a lack of specificity. See Hermida v. Archstone, 950 F. Supp. 2d 298, 312 (D. Mass. 2013) ("Courts disfavor the use of block billing 'because it requires decipher[ing] on the judges' part.'") (quoting E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 355 (D. Mass. 2013)). The Court cautions Plaintiff's counsel that a lack of detail is not the only problem with block billing; it can also raise questions about the accuracy of the time recorded. For example, the block-billed entries quoted in E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 355 (D. Mass. 2013), which the court found to be imprecise and lacking in task differentiation, are similar to the entries here.

Courts have generally implemented global fee reductions of ten to twenty percent where block billing is utilized. Hermida, 950 F. Supp. 2d at 312. In most of those cases, however, the

instances of block billing were widespread. See Conservation Law Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 253 (D. Mass. 2011) (entirety of firm's time records were block billed); Hermida at 312 (counsel used block billing "almost exclusively"); E.E.O.C., 934 F. Supp. 2d at 355 (counsel's records "prominently feature evidence of block billing"). In comparison, a global reduction of fees in this case would not be appropriate, since the large majority of entries are not block billed. This is not to say that counsel's recordkeeping practices were ideal, but where only three or four entries on trial days are block billed, and those entries contain a good amount of detail, the Court will allow counsel to collect their full fee.

### C. Core and Non-Core Work

Defendants argue that the Court should employ the "core" and "non-core" work distinction, or otherwise implement an across-the-board rate cut, to reflect the fact that some tasks are less demanding than others. See, e.g., Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st Cir. 1993) (describing how courts generally delineate core and non-core work). Plaintiff points out that the choice to impose this distinction lies within the discretion of the district court. Matalon v. Hynnes, 806 F.3d 627, 639 (1st Cir. 2015) (upholding fee award that did not employ core/non-core distinction). Some judges within the District of Massachusetts have employed these categories, while others have decided not to use them. See Porter v. Cabral, Civ. A. No. 04-11935-DPW, 2007 WL 602605, at *12 n.13 (D. Mass. Feb. 21, 2007) (Woodlock. J.) (discussing cases, and electing to apply single rate as matter of practice), aff'd sub nom. Cabral v. U.S. Dep't of Justice, 587 F.3d 13 (1st Cir. 2009). Here, the Court is not persuaded by Defendants' general arguments in support of the core/non-core distinction. Defendants have not explained why employing the distinction would be necessary in the circumstances of this case, aside from making broad assertions that Plaintiff's counsel billed at "astronomical" rates and that refusing to

employ the distinction would result in a "windfall." An examination of the entirety of Plaintiff's time records demonstrates that "non-core" work such as writing letters and making phone calls did not occupy a large amount of counsel's time. Furthermore, the Court does not necessarily agree that this type of work, which often involves communicating with and/or advocating for a client, and frequently cannot be performed by a paralegal or junior attorney, should always be considered less worthy of compensation than activities defined as "core" work. For the same reason, the Court declines Defendants' request to employ an across-the-board rate cut.

### D. Adjustment to Reflect Plaintiff's Success

Defendants argue that the lodestar should be adjusted downward to reflect the fact that Plaintiff did not succeed on most of his claims. Where a plaintiff has prevailed on some claims but not others, or wins an award significantly less than what was sought, the final fee award can, and sometimes should, be adjusted downward. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 338–39 (1st Cir. 1997). The rationale for such a downward adjustment does not apply, however, "where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories," since "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Bogan v. City of Boston, 489 F.3d 417, 428 (1st Cir. 2007) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)). Here, the successful claim arose from the same common core of facts as the unsuccessful claims. While plaintiff did not prevail on his claim for malicious prosecution, nor on the remainder of his claims for use of excessive force, all the claims arose from the same series of events, and were so closely related that it would be difficult, if not impossible, to separate work done on the successful claims from work done for the unsuccessful ones. Nor would an across-the-board downward adjustment be appropriate

where Plaintiff ultimately proved that he was the victim of excessive force, the crux of his case, and received a substantial damage award.

### E. Calculation of Award

As discussed above, the Court sets Mr. Sinsheimer's rate at $400 per hour and Ms. Thomas's rate at $315 per hour. Defendants have not challenged Plaintiff's proposed rate of $190 per hour for Mr. Stoker, which the Court finds reasonable. Plaintiff also requests a rate of $90 per hour for the paralegal Rachel Costello, and $90 per hour for work Mr. Stoker performed as a law student. Plaintiff requests 1.5 hours for attorney Michael Harriman at a rate of $325 per hour, but because Plaintiff has provided no information about Mr. Harriman's qualifications, the Court will set his rate in accordance with Mr. Stoker's, at $190 per hour.

The Court determined that it will subtract one hour from Mr. Stoker's time, as discussed above. The Court will also reduce the award for Ms. Thomas's fees by ten percent for block billing. In his declaration, Mr. Sinsheimer agreed to waive all fees generated by Rachel Sinsheimer and Hannah Fikar, and to waive 9.5 hours billed by Mr. Stoker during jury deliberation. [ECF No. 148, at 7]. Mr. Sinsheimer filed a supplemental motion for fees in which he reported an additional 4.2 hours expended by himself, and 4.2 hours by Mr. Stoker, to prepare the motion for attorneys' fees and the reply brief. [ECF No. 155, at 2]. Finally, Mr. Sinsheimer reports a total of $6,124.59 in expenses. [ECF No. 148, at 4].

Beginning with the hourly totals listed in Mr. Sinsheimer's affidavit [ECF No. 148, at 5–6], and making the deductions and adjustments listed above, the Court awards Plaintiff his attorneys' fees as follows:

Robert Sinsheimer: $82,940.00 (207.35 hours at $400 per hour)

Lauren Thomas: $11,481.75 (40.5 hours at $315 per hour, the total reduced by ten percent)

Wesley Stoker: $47,180.00 (73.5 hours at $90 per hour, and 213.5 hours at $190 per hour)

Michael Harriman: $285.00 (1.5 hours at $190 per hour)

Rachel Costello: $756 (8.4 hours at $90 per hour)

Expenses: $6,124.59

TOTAL: $148,767.34

### III.  CONCLUSION

Accordingly, the Court <u>GRANTS</u> Plaintiff's motion for attorneys' fees [ECF No. 147] and supplemental motion for attorneys' fees [ECF No. 155] in the amount of $148,767.34.

**SO ORDERED.**

October 25, 2016 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE